## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

| | |
|---|---|
| TRUSTEES OF THE I.B.E.W. LOCAL 405 HEALTH & WELFARE FUND; <br><br> TRUSTEES OF THE I.B.E.W. LOCAL 405 DEFERRED SAVINGS FUND a/k/a I.B.E.W. LOCAL 405 DEFERRED SAVINGS PLAN; <br><br> TRUSTEES OF THE I.B.E.W. LOCAL 405 EDUCATION FUND; <br><br> TRUSTEES OF THE NATIONAL ELECTRICAL BENEFITS FUND; <br><br> LOCAL UNION NO. 405 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS; and <br><br> NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION INCORPORATED; <br><br>      Plaintiffs, <br><br> vs. <br><br> AFFORDABLE ELECTRIC, INC. <br><br>      Defendant. | No. 08-CV-117-LRR <br><br> **ORDER** |

_____

### *TABLE OF CONTENTS*

*I.*    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*II.*   *BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*

*III.*  *THE LAW* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*
      *A.*    *Substantive Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *4*

    B.    *Law of Default and Default Judgment* . . . . . . . . . . . . . . . . . . . . . . 6
IV.    **DAMAGES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    A.    *Unpaid Contributions* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    B.    *Prejudgment Interest* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    C.    *Liquidated Damages* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
V.    **ATTORNEY'S FEES AND COSTS** . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    A.    *Attorney's Fees* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
    B.    *Costs* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
VI.    **INJUNCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
VII.    **CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

## I. INTRODUCTION

The matters before the court are the Motion for Entry of Judgment for Money Damages and Other Equitable Relief Upon the Defendant's Default Pursuant to Rule 55(b)(2) ("Application") (docket no. 9) and Motion for Attorney Fees ("Motion") (docket no. 10).

## II. BACKGROUND

On September 22, 2008, Plaintiffs Trustees of the I.B.E.W. Local 405 Health & Welfare Fund ("Health & Welfare Fund"), Trustees of the I.B.E.W. Local 405 Deferred Savings Fund a/k/a I.B.E.W Local 405 Deferred Savings Plan ("Savings Fund"), Trustees of the I.B.E.W. Local 405 Education Fund ("Education Fund"), Trustees of the National Electrical Benefits Fund ("NEBF"), Local Union No. 405 International Brotherhood of Electrical Workers ("Local 405") and National Electrical Contractors Association, Incorporated ("NECA") (collectively, "Plaintiffs") filed a Complaint (docket no. 2-3) against Defendant Affordable Electric, Inc. The Complaint contains two counts.

In Count 1, the Health & Welfare Fund, the Savings Fund, the Education Fund and NEBF allege Defendant failed to make contributions due under a collective bargaining agreement ("Agreement"). Pursuant to 29 U.S.C. § 1132(g)(2), they seek judgment in the amount of the unpaid contributions plus additional penalties, interest and attorney's fees

2

and costs.

In Count 2, Local 405 and NECA allege Defendant failed to make contributions due under the Agreement. Pursuant to 29 U.S.C. § 185, they seek payment of the unpaid contributions plus interest, attorney's fees and costs.

Plaintiffs ask the court in both counts for an order that requires Defendant to submit to an audit of its books and records. Plaintiffs allege that, absent such an audit, they are unable to determine whether Defendant owes additional contributions under the Agreement.

On September 23, 2008, Plaintiffs served Defendant at its place of business by delivering a copy of the Summons and Complaint upon Defendant's registered agent at 6700 Milburn Road NE, Cedar Rapids, Iowa. Defendant did not file an answer to the Complaint.

On November 4, 2008, Plaintiffs filed their "Application for Entry of Default Against the Defendant Pursuant to Rule 55(a) FRCP" (docket no. 7). On November 5, 2008, the Clerk of Court filed a Default Entry (docket no. 8). *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *see also* Fed. R. Civ. P. 7(a) (requiring a defendant to file an answer).

On December 9, 2008, Plaintiffs filed the Application and the Motion. Plaintiffs request that the court enter default judgment against Defendant. Defendant has not filed a response to either the Motion or the Application, and the time for doing so has expired. The court finds that a hearing on the Application and the Motion is not appropriate. *See* Fed. R. Civ. P. 55(b)(2) (stating that the court "may" conduct a hearing); *see, e.g., Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1333 (8th Cir. 1988) ("[T]he district court need not hold an evidentiary hearing on the issue of damages."); *Overcash v. United Abstract*

*Group, Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) ("[I]t is not necessary for a court to hold a hearing; instead, a court may rely upon affidavits and documentary evidence."); *United States v. Gant*, 268 F. Supp. 2d 29, 32 (D.D.C. 2003) (same).

### III. THE LAW

#### A. Substantive Law

Count 1 is founded upon 29 U.S.C. § 1145. Section 1145 is a part of the Employee Retirement Income Security Act of 1974 ("ERISA"). Section 1145 provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. ERISA provides a private right of action to the trustees of a plan to enforce § 1145 when an employer violates its obligations under the plan or a collective bargaining agreement. 29 U.S.C. § 1132(d)(1).

Once liability under § 1145 is established, upon proper proof the court is required to award a plaintiff damages for: (1) unpaid contributions, (2) interest on the unpaid contributions, (3) interest on the unpaid contributions or liquidated damages and (4) reasonable attorney's fees and the costs of the action. 29 U.S.C. § 1132(g)(2);[1] *see United*

---

[1] In full, § 1132(g)(2) provides:

> (2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—

(continued…)

*Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan v. Yahn*, 787 F.2d 128, 134 (3d Cir. 1986) ("The language of [§1132(g)(2)] is mandatory."), *aff'd by an equally divided court*, *Pension Benefit Guar. Corp. v. United Retail & Wholesale Employees Teamsters Union Local No. 115 Pension Plan*, 481 U.S. 735, 735 (1987); *accord Int'l Painters*, 239 F. Supp. 2d at 31 ("When a court awards a default judgment against a defendant for contributions owed under a collective bargaining agreement, ERISA provides that the court must award: (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) liquidated damages; and (4) reasonable attorney's fees and costs of the action." (Footnotes and citations omitted.)). "The legislative history of these provisions explains that Congress added these strict remedies to give employers a strong incentive to honor their contractual obligations to contribute and to facilitate the collection of delinquent accounts." *Laborers Health & Welfare Trust Fund for N. Cal. v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988).

Count 2 is founded upon 29 U.S.C. § 185. Section 185 is part of the Labor

---

[1](...continued)
>     (i) interest on the unpaid contributions, or
>     (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

Management Relations Act of 1947 ("LMRA") and grants any "labor organization representing employees in an industry affecting commerce" the privilege to sue an employer with which it has a contract for breach of such contract in federal court, regardless of the diversity of the parties or the amount in controversy. 29 U.S.C. § 185(a). "In passing [§ 185], Congress was interested in the enforcement of collective bargaining contracts since it would promote a higher degree of responsibility upon the parties to such agreements, and will thereby promote industrial peace." *Drake Bakeries, Inc. v. Local 50, Am. Bakery & Confectionery Workers Int'l., AFL-CIO*, 370 U.S. 254, 263 (1962) (quotations and citation omitted).

Liability and damages for a § 185 claim are "governed by the terms of the contract," *e.g.*, a collective bargaining agreement. *Stallcop v. Kaiser Found. Hosp.*, 820 F.2d 1044, 1048 (9th Cir. 1987); *see also Rabalais v. Dresser Indus., Inc.*, 566 F.2d 518, 519 (5th Cir. 1978) (holding that claimed violation of collective bargaining agreement is bound by terms of that agreement). Like other contracts, the court must "interpret the words in a [collective bargaining agreement] to give them their ordinary and reasonable meaning." *Penn Packing Co., Inc. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am. Local 195*, 497 F.2d 888, 891 (3d Cir. 1974).

### *B. Law of Default and Default Judgment*

Because Defendant failed to answer the Complaint and the Clerk of Court entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a), Defendant's liability to Plaintiff for violations of 28 U.S.C. §§ 1145 and 185 is established.

> If the court determines that the defendant is in default, his liability to the plaintiff is deemed established and the plaintiff is not required to establish his right to recover. The allegations of the complaint except as to the amount of damages are taken as true.

*Brown v. Kenron Aluminum & Glass Corp.*, 477 F.2d 526, 531 (8th Cir. 1973) (internal

quotation omitted); *see also Flynn v. Williams Masonry*, 233 F.R.D. 176, 177 (D.D.C. 2005) (finding damages where court had entered default in an ERISA case and holding that "[t]he only issue before the Court . . . is the amount of damages owed by the defendants to the plaintiffs") (citing *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980)). The Complaint alleges Defendant was a party to the Agreement, obligated to make contributions in accordance with the terms of a multiemployer plan and failed to make such contributions. These allegations are established as true for purposes of this order. *Brown*, 477 F.2d at 531.

However, the court is not required to accept the allegations of the Complaint regarding damages as true when deciding whether to enter default judgment under Federal Rule of Civil Procedure 55(b). *Id*. "[I]n civil litigation between private parties, a party entitled to judgment by default is required to prove the amount of damages that should be awarded." *Oberstar*, 987 F.2d at 505. Plaintiffs must prove their damages by a preponderance of the evidence. *See Everyday Learning v. Larson*, 242 F.3d 815, 818 (8th Cir. 2001) (affirming district court's decision not to award damages after default judgment hearing where damages were "speculative and not proven by a fair preponderance of the evidence.").

As a general rule, upon default a court may establish damages "by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and give judgment accordingly." *Pope v. United States*, 323 U.S. 1, 12 (1944); *see, e.g.*, *Int'l Painters*, 239 F. Supp. 2d at 30 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). In determining the amount of damages for a default judgment in an ERISA case brought by a retirement plan against an employer, the court "may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)

7

(citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)). The court must afford Plaintiffs all reasonable inferences from the evidence offered. *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981); *Int'l Painters*, 239 F. Supp. 2d at 30.

## IV. DAMAGES

Plaintiffs have presented the court with evidence in the form of affidavits to prove three categories of damages. First, Plaintiffs seek the unpaid contributions that were due and owing under the Agreement at the time the Complaint was filed. Second, Plaintiffs seek prejudgment interest from May 26, 2008, the date the unpaid contributions became due and owing, to October 24, 2008, the date Defendant's bonding company sent $25,000 to Plaintiffs's counsel. Third, Plaintiffs seek liquidated damages. The court considers each of these three categories of damages, in turn.

### A. Unpaid Contributions

In the Complaint, Plaintiffs allege Defendant breached the Agreement when it failed to make the following contributions on May 25, 2008 for the month of April of 2008: $10,135.14 to the Health & Welfare Fund; $9,831.40 to the Savings Fund; $992.37 to the Education Fund; $1,496.59 to the NEBF; $2,453.40 to Local 405; and $501.28 to NECA. In the Application, Plaintiffs seek judgment for the total value of these delinquent contributions, $25,410.18. In support of its request for damages for delinquent contributions, Plaintiffs provided the court with the Affidavit Regarding Damages of Vanessa Taylor ("Taylor Affidavit") (docket no. 9-2) and Affidavit Regarding Damages of Pat Swigert ("Swigert Affidavit") (docket no. 9-3).

Affording Plaintiffs all reasonable inferences, *see Au Bon Pain Corp.*, 653 F.2d at 65, the court finds Plaintiffs have proven that they are collectively entitled to $25,410.18 for delinquent contributions. The Taylor and Swigert Affidavits support Plaintiffs' claims for damages. Accordingly, Plaintiffs are entitled to their respective unpaid contributions under ERISA and the LMRA. 29 U.S.C. § 1132(g)(2); 29 U.S.C. § 185.

Plaintiffs concede that the Taylor and Swigert Affidavits show Defendant is entitled to a credit of $25,738.00. On October 24, 2008, counsel for Plaintiffs secured $25,000.00 from Defendant's bonding company and sent these funds to Plaintiffs. For some unstated reason, "the sum of $738.00 was also allocated as a credit toward the obligations of the Defendant." Taylor Affidavit at ¶ 5.[2]

Accordingly, the court shall enter formal judgment in the amount of $25,410.18 against Defendant for unpaid contributions. However, the court shall credit the $25,738.00 payment from Defendant's bonding company towards this judgment. Therefore, no money is due and owing on the unpaid contributions.

### B. *Prejudgment Interest*

In the Complaint, Plaintiffs allege they are entitled to interest as provided by law. In the Application, Plaintiffs seek prejudgment interest on the unpaid contributions in the amount of $630.72. Plaintiffs only seek prejudgment interest from May 26, 2008 to October 24, 2008, the date the bonding company sent $25,000.00 to Plaintiffs.

In support of their request for prejudgment interest, Plaintiffs have provided the court with the Affidavit of Plaintiffs' Attorney Regarding Interest ("Interest Affidavit") (docket no. 9-4). Attorney Mark H. Rettig explains that Defendant failed to make timely payments for contributions for April of 2008. Under the Agreement, interest accrued in favor of Plaintiffs after May 25, 2008 on such delinquent April of 2008 contributions until October 24, 2008. Attorney Rettig calculates prejudgment interest at the rate of 6% for the 151-day period between May 25, 2008 and October 24, 2008.

ERISA provides that, as to Plaintiffs Health & Welfare Fund, Savings Fund, Education Fund and NEBF (collectively, "ERISA Plaintiffs"), interest on unpaid contributions must be determined by using a "rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). The ERISA

---

[2] The date of this credit is unclear from the record. The court assumes the allocation was also properly made on October 24, 2008.

Plaintiffs note that no portion of the Agreement sets a rate for interest on unpaid contributions, and the court can find none. Pursuant to 26 U.S.C. § 6621, the applicable rate is the federal short-term rate plus three percentage points. 26 U.S.C. § 6621(2) (setting underpayment rate). These federal short-term rates are rounded to the nearest full percent. *See id.* § 6621(b)(3) ("Any such rate shall be rounded to the nearest full percent . . . .").

The court finds that the ERISA Plaintiffs are entitled to interest on the unpaid contributions consistent with 26 U.S.C. § 6621. 29 U.S.C. § 1132(g)(2)(B). Contrary to the Interest Affidavit, the court finds the applicable rate is not uniformly 6% over the 151-day period. As the Interest Affidavit itself shows, the underpayment rate for July, August and September of 2008 dropped to 5% before rebounding to 6% in October of 2008. The court takes judicial notice that the applicable rate for May and June of 2008 was 6%; the applicable rate for July, August and September of 2008 was 5%; and the applicable rate for October of 2008 was 6%. *See Scalamandre v. Oxford Health Plans (N.Y.), Inc.*, 823 F. Supp. 1050, 1064 (E.D.N.Y. 1993) (stating that simple interest applies and interest is not to be compounded daily) (comparing §§ 6621 and 6622).

The court also finds that Plaintiffs Local 405 and NECA are entitled to interest on the unpaid contributions. *Higdon Const.*, 739 F.2d at 283 (holding that it is within the court's discretion whether to award prejudgment interest in a § 185 action); *see also Blau*, 368 U.S. at 414 (noting that in absence of statutory directive, award of prejudgment interest is within discretion of the court). The court takes the view that "[i]n awarding prejudgment interest it is appropriate for the [c]ourt to allow prejudgment interest at such a rate as will compensate [§ 185 plaintiffs] for the delay in the receipt of their money." *Weatherall Concrete,* 468 F. Supp. at 1171. Defendant failed to pay contributions under unambiguous contractual provisions. As tangible losses, interest ought to apply. *See Colon Velez*, 957 F.2d at 941 (holding that prejudgment interest appropriately applies to

10

"tangible losses" in a successful § 185 suit). The court finds no reason to apply a different rate for the unpaid contributions to Plaintiffs Local 405 and NECA than it does to the ERISA Plaintiffs.

Accordingly, the court finds Defendant owes Plaintiffs $589.53 in prejudgment interest. Because Plaintiffs concede Defendant is entitled to a remaining credit of $327.82, the court shall hold that only $261.71 of this judgment for prejudgment interest is still due and owing to Plaintiffs.

### C. *Liquidated Damages*

The ERISA Plaintiffs also seek $4,491.10 in penalties for the delinquent contributions, pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii).[3] The Agreement provides for a $50.00 penalty for each calendar day of delinquency after the 25th day of the month following the month of the contribution. However, there is 20% cap on liquidated damages found in § 1132(g)(2)(C)(ii). 29 U.S.C. § 1132(g)(2)(C)(ii); *see, e.g., Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 31 n.3 (D.D.C. 2002) ("Liquidated damages may not be greater than 20 percent of the unpaid contributions."). Given that the penalties contemplated in the Agreement greatly exceeds the statutory cap, Plaintiffs are entitled to penalties of only 20% of the unpaid contributions.

Applying the statutory formula, the Health & Welfare Fund is entitled to a penalty of 20% of $10,135.14, or $2,027.03; the Savings Fund is entitled to a penalty of 20% of $9,831.40, or $1,966.28; the Education Fund is entitled to 20% of $992.37, or $198.47; and NEBF is entitled to a penalty of 20% of $1,496.59, or $ 299.32. Plaintiffs are entitled to judgment for the total of the penalties, $4,491.10.

Accordingly, the court holds that Plaintiffs are entitled to judgment in the amount of $4,491.10 against Defendant for liquidated damages.

---

[3] Local 405 and NECA do not seek liquidated damages under the Agreement.

## V. ATTORNEY'S FEES AND COSTS

In the Motion, Plaintiffs seek $6,550.00 in attorney's fees and $441.11 in costs. Plaintiffs submitted two affidavits in support of the Motion, the Affidavit of Plaintiffs' Attorney Regarding Attorney Fees ("Fee Affidavit") (docket no. 10-2) and the Affidavit of Kay Johansen ("Johansen Affidavit") (docket no. 10-3). The Fee Affidavit itemizes the services billed to the Plaintiffs by date of service, billing attorney, services performed, time expended and attorney's hourly rate. The Fee Affidavit also lists the costs incurred by Plaintiffs' counsel. The Johansen Affidavit attests to the reasonableness of the per hour rate for the billing attorney, the number of hours expended and the total fees.

### A. Attorney's Fees

For successful ERISA claims, the court is required to award Plaintiffs reasonable attorney's fees. *See* 29 U.S.C. § 1132(g)(2)(D) (stating court "shall award . . . reasonable attorney's fees"); *see also Hewitt v. Helms*, 459 U.S. 460, 471 (1983) (remarking that the word "shall" is "language of an unmistakably mandatory character"), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 487 (1995). Under the LMRA, the awarding of attorney's fees is within the court's discretion, *Iowa Beef Processors*, 597 F.2d at 1148, and the court is empowered to do so to achieve the public policy ends of the LMRA, *see also Gen. Drivers & Helpers Union Local No. 554 v. Young & Hay Transp. Co.*, 522 F.2d 562, 568 (8th Cir. 1975) ("An award of attorneys fees in a suit brought under [§ 185] constitutes an appropriate item of damage to be awarded by courts in the enforcement of national labor policy . . . ." (Citations and quotations omitted.)); *United Steelworkers of Am., AFL-CIO v. Butler Mfg. Co.*, 439 F.2d 1110, 1112-13 (8th Cir. 1971) (holding that attorney fees are "an appropriate item of damage" in a case brought pursuant to § 185). Further, the Agreement provides as follows:

> In the event the trustees of any fund are required to place any contractor account in the hands of legal counsel for collection, the employer shall be liable for the delinquent contributions, penalties, all attorney fees and reasonable costs incurred in the

> collection process, including but not limited to filing fees, Sheriffs fees, audit costs, interest and other collection expenses incurred by the Trustees.

Agreement at 20.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (interpreting 42 U.S.C. § 1988). The Eighth Circuit Court of Appeals often follows this "lodestar approach" to determine the amount of attorney's fees to which a prevailing claimant is entitled. *See, e.g., H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 259 (8th Cir. 1991). "As a general rule, a reasonable hourly rate is the prevailing market rate, that is, 'the ordinary rate for similar work in the community where the case has been litigated.'" *Moysis v. DTG Datanet*, 278 F.3d 819, 828 (8th Cir. 2002) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1047 (8th Cir. 2001)).

"[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437. To meet its burden, the fee applicant must "submit evidence supporting the hours worked and rates claimed." *Id.* at 433. Inadequate documentation or imprecise billing may be a basis for a fee reduction. *Bell v. United Princeton Props., Inc.*, 884 F.2d 713, 715 (3d Cir. 1989). This is so because incomplete or imprecise billing records do not allow for meaningful review of the fee application to determine whether it includes "'excessive, redundant, or otherwise unnecessary' hours and may make it impossible to attribute a particular attorney's specific time to a distinct issue or claim." *H.J.*, 925 F.2d at 260 (quoting *Hensley*, 461 U.S. at 434, 437 & n.12).

The court finds the claimed fees are reasonable. Reviewing the itemized list of expenditures, the Fee Affidavit reveals a $200 per hour rate for Attorney Mark H. Rettig. According to the Fee Affidavit, Rettig expended 32.75 hours on the case, which results in

13

$6,550 in fees. The Johansen Affidavit attests to the reasonableness of the hourly rate for Attorney Rettig and his time expended, and the total proposed fee.

Accordingly, the court shall award Plaintiffs $6,550.00 as a reasonable attorney's fee.

### B. Costs

Under ERISA, the court is required to award Plaintiffs costs. *See* 29 U.S.C. § 1132(g)(2)(D) (stating court "shall award . . . the costs of the action"); *see also Hewitt*, 459 U.S. at 471 (remarking that the word "shall" is "language of an unmistakably mandatory character"). Under the LMRA, the court may in its discretion award Plaintiffs costs. *Iowa Beef Processors*, 597 F.2d at 1148. Further, the Agreement provides that Defendant shall pay Plaintiffs reasonable costs.

Plaintiffs request $441.11 in costs. The Fee Affidavit shows that Plaintiffs spent $441.11 on the filing fee, certified letters, postage and Westlaw research.

The court holds that the categories of costs recoverable in this case is identical to the costs recoverable under 28 U.S.C. § 1920. *Agredano v. Mutual of Omaha Cos.*, 75 F.3d 541, 544 (9th Cir. 1996); *Harley v. Minn. Min. & Mfg. Co.*, No. Civ. 4-96-488(JRT/RLE), 2003 WL 22283345, *1 (D. Minn. Sept. 23, 2003), *aff'd on other grounds sub. nom. Harley v. Zoesch*, 413 F.3d 866 (8th Cir. 2005); *see also W. Va. Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991) (stating the term "costs" in 42 U.S.C. § 1988 should be read in harmony with § 1920); *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987) (stating that the term "costs" in Federal Rule of Civil Procedure 54(d) should be read in harmony with § 1920). Accordingly, the filing fee of $350.00 is clearly compensable as a cost. 28 U.S.C. § 1920(1); *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 232 F. 263 (S.D.N.Y. 1916) ("A docket fee is unquestionably 'costs'"). The $4.53 spent on Postage is not compensable. *Smith v. Tenet Healthsys. SL, Inc.*, 436 F.3d 879, 889-90 (8th Cir. 2006) ("Section 1920 does not authorize taxing Smith for the

defendants' postage and delivery expenses.") (citing *Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1999) (holding postage is "clearly nonrecoverable"); *Perlman*, 990 F. Supp. 1039 (N.D. Ill 1998) (holding postage not recoverable in ERISA action), *rev'd on other grounds* 195 F.3d 975 (7th Cir. 1999). Similarly, the court declines to award Plaintiffs anything for certified letter fees, because it is unclear from the record what the fees were incurred for or to what extent these letter fees were postage fees. *Id.*; *cf. Pinkham v. Camex, Inc.*, 84 F.3d 292, 294-95 (8th Cir.1996) ( "[C]osts . . . . for messenger and express mail . . . are not 'exemplification and copies of papers necessarily obtained for use in the case' under 28 U.S.C. § 1920(4). "). Finally, under governing Eighth Circuit Court of Appeals precedent, the court may not award Plaintiffs' request for $37.50 in Westlaw fees. *Standley v. Chilhowee R-IV Sch. Dist.*, 5 F.3d 319, 325 (8th Cir. 1993); *Sun Media Sys., Inc. v. KDSM, LLC*, NO. 4:06-CV-106, 2008 WL 4969159, *2 (S.D. Iowa Nov. 24, 2008) ("[I]t is well settled in the Eighth Circuit that 'computer-aided research, like any other form of legal research, is a component of attorneys' fees and cannot be independently taxed as an item of cost . . . .'" (quoting *Leftwich v. Harris-Stowe State Coll.*, 702 F.2d 686, 695 (8th Cir. 1983)). *But see Trustees of the Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 466 F.3d 1253, 1258-59 (9th Cir. 2006) (identifying circuit-split and declining to follow *Standley* as a lone outlier); *Trustees of the I.B.E.W. Local 405 Health & Welfare Fund v. Tichy Elec. Co.*, No. 07-CV-39-LRR, 2008 WL 154641, *13 (Jan. 15, 2008) (failing to discuss *Standley*). This court is bound to follow *Standley* even though it appears every other circuit court of appeals to consider its reasoning has declined to follow it. *See, e.g., Redland*, 466 F.3d at 1258-59 (collecting cases); *Emmenegger v. Bull Moose Tube Co.*, 33 F. Supp. 2d 1127, 1137 (E.D. Mo. 1998) (same)).

Accordingly, the court shall award Plaintiffs $350.00 in costs.

### *VI. INJUNCTION*

The court may also award other legal or equitable relief, 29 U.S.C. § 1132(g)(2),

15

such as an injunction requiring a defendant to cooperate with an audit of its records. *See, e.g., Int'l Painters*, 239 F. Supp. 2d at 31 (citing *Mason Tenders Dist. Council Welfare Fund v. Bold Constr. Co.*, No. 01CIV0641LTSTHK, 2002 WL 1788024, at *3 (S.D.N.Y. Aug. 1, 2002)). In the Application, Plaintiffs ask the court to order Defendant to submit to an audit of its books and records. Plaintiffs allege that, absent such an audit, they are unable to determine whether Defendant owes additional contributions under the Agreement.

The court finds that an injunction is appropriate in this case. Plaintiffs' requested injunction promotes the legislative intent of ERISA and is grounded in a good faith belief that additional contributions may be due and owing. The court shall order Defendant to cooperate with an audit of its books and records to ensure that the Defendant's self-reports during calendar year 2008 are accurate. The audit shall take place on or before March 1, 2009. *See id.* (issuing similar injunction); *Central States, Se. & Sw. Areas Pension Fund v. Alco Express Co.*, 522 F. Supp. 919, 927-28 (E.D. Mich. 1981) (same); *Mason Tenders Dist. Council Welfare Fund v. Bold Constr. Co.*, No. 01CIV0641LTSTHK, 2002 WL 1788024, *3 (S.D.N.Y. Aug. 1, 2002) (same).

## VII. CONCLUSION

**IT IS THEREFORE ORDERED THAT:**

(1) Plaintiffs' Application (docket no. 9) and Motion (docket no. 10) are **GRANTED IN PART AND DENIED IN PART**;

(2) The Clerk of Court is directed to enter default judgment in favor of Plaintiffs and against Defendant in the amount of **$37,390.81**;

(3) Defendant is entitled to **a credit of $25,738.00** against such judgment;

(4) As of the date of the instant Order, **Defendant owes Plaintiffs $11,652.81**;

(5) **Defendant shall cooperate with an audit of its books and records to ensure that the Defendant's self-reports during calendar year 2008 are accurate. Defendant shall make such books and records available to**

**Plaintiffs and their agents for their inspection at a reasonable time and place. The audit shall take place on or before March 1, 2009**; and

(6)　The Clerk of Court is directed to **CLOSE THIS CASE**.

**IT IS SO ORDERED.**

**DATED** this 7th day of January, 2009.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA